## MILLER v. MILLER et al.

No. 24649. Sept. 25, 1935.

Rehearing Denied Nov. 19, 1935.

Henry S. Johnston, Peyton E. Brown, and W. H. Rice, for plaintiff in error.

L. A. Maris and George W. Miller, for defendant in error Lucille Miller.

O. S. Ellifrit and F. C. Duvall, for defendant in error Security Bank & Trust Co.

PER CURIAM. The defendant in error, Lucille Miller, filed her petition and affidavit in replevin in this case in the court below against the Security Bank & Trust Company, a banking corporation of Ponca City, Okla., as defendant, stating that such defendant was unlawfully withholding 500 shares of common stock of the Ponca Industrial Finance Corporation from her, and

praying for possession thereof. The defendant bank filed its answer stating that it did not claim the stock sued for and was holding possession of it for the reason that both the plaintiff, Lucille Miller, and the interpleader and plaintiff in error, Zack T. Miller, were claiming it, and that it was unable to determine which of such parties was entitled to possession thereof; that such Zack T. Miller is a necessary party to this action to accomplish a complete determination by the court of the right to possession of the stock, and prayed the court for an order making such Zack T. Miller a party to the action for such purpose. Thereafter such bank filed what it termed an amendment to its answer and an affidavit in accordance with section 226, C. O. S. 1921. Thereupon the court made its order directing that Zack T. Miller appear in the case and maintain or relinquish his claim to right of possession of the stock, and giving him the right to make himself defendant in the place of the defendant bank, and that the bank be discharged from further liability. Zack Miller filed what he designated as an answer and cross-petition of Zack T. Miller. This answer and cross-petition sets up, and it is admitted by all in the evidence, that Lucille Miller, with her husband, J. C. Miller, Jr., became indebted to the Security Bank & Trust Company, the defendant below, in the sum of $9,000, and executed their note therefor. Lucille Miller owned 1,450 shares of Ponca Industrial Finance Corporation stock, par value $10 per share. On reorganization of such corporation, 500 shares of par value of $10 were issued in the place thereof. There is no issue over this change of the amount of stock involved. This stock was deposited by her with the bank as security for the payment of the $9,000, and she endorsed the same in blank. In addition to this stock she put up with the $9,000 note 100 shares of stock in the Continental Oil Company, 40 shares Sinclair Oil Company, 100 shares General Motors, 100 shares Standard Oil Company, of New Jersey, 100 shares Richfield Oil Company, and 100 shares Skelly Oil Company. There is no controversy over the ownership or right to possession of any of the stock excepting that of the Ponca Industrial Finance Corporation.

On February 28, 1928, Miller Bros. 101 Ranch Trust, by Geo. W. Miller, executed a note to the Security Bank & Trust Company in the sum of $20,000. This note was endorsed by George L. Miller and J. C. Miller, Jr. On the 27th day of April, 1931, Zack T. Miller sought a loan in the sum of $22,500 from the Security Bank & Trust Company. The bank was represented in this transaction by its president, L. K. Meek. Meek agreed to loan Zack T. Miller $22,500, provided Zack would, out of the amount so loaned, take up the balance due on the old Miller Bros. 101 Ranch Trust note, which was $8,678.77. Mr. Meek, as president of the bank, held the stock deposited by Mrs. Miller not alone as security for the payment of the Lucille Miller—J. C. Miller, Jr., note of $9,000, but also as security for the payment of the Miller Bros. 101 Ranch Trust note, and wrote a letter to Lucille Miller and J. C. Miller, Jr., her husband, stating this. The bank transacted the business with J. C. Miller, Jr., who apparently was acting for his wife, Lucille. There is nothing in the record showing any delegated authority in the husband other than that relative to the $9,000 loan and note which she executed. The bank loaned Zack the $22,500, and the amount due and unpaid on the Ranch Trust note was held out of the money borrowed by Zack on the $22,500 loan. The $9,000 note made by J. C., Jr., and Lucille was satisfied at the bank and the latter demanded return of the Ponca Industrial Finance Corporation stock, which in the reorganization of such company was reduced to the amount sued for. Zack contends that the stock deposited by Lucille as security for the payment of the $9,000 note, which she executed with her husband, was also held as security for the payment of the Ranch Trust note, and that when he bought this note from the bank he also acquired right to the stock securing it. There is no evidence in the record showing that Lucille Miller authorized the depositing or the holding of the stock for any purpose other than as security on the $9,000 note which she personally executed. Meek, for his bank, wrote a letter, which is in evidence, to Lucille and J. C., Jr., her husband, that he was holding the stock in question as security on the Ranch Trust note as well as on the $9,000 note which they made. It is not shown that such letter ever came into Lucille's possession or to her knowledge. Council for appellants insist that Lucille's endorsement in blank of the stock and her delivery thereof to her husband to deposit as security for a specific loan at the bank, constituted the husband agent to do anything he might do with it. While we do not agree with counsel, we do not consider that this question is necessarily in issue. While the banker wrote a letter in the husband's presence that the bank was holding the stock for security on

the Ranch Trust note also, there is no evidence that such husband actually authorized this, though he may have assented to it.

There are two questions before the court, and, under our view of the law, they resolve themselves into one decisive question, that is, the solution of one solves the other. The first contention of appellants is that the burden of proof was upon Lucille Miller, and that since she did not introduce any evidence her demurrer to the evidence of Zack T. Miller should not have been sustained. On the other hand, if the burden was upon Zack and he did not produce evidence sufficient to entitle him to a judgment, then it was proper for the court to sustain Lucille Miller's demurrer to his evidence.

Lucille Miller filed an ordinary replevin action against the bank, claiming right to possession of the stock. The bank answered that it did not claim the stock or the right of possession thereof and was willing to deliver the same to Mrs. Miller, but in its answer and in a statutory affidavit filed stated that Zack T. Miller claimed right to possession of it, and by order of the court Zack was required to come into the case and establish or relinquish his claim to the stock. The appellants insist that the burden of proving her right to the stock remained with Mrs. Miller as the plaintiff in the case. The bank made no claim to the stock and consented to Lucille's having it, and therefore in so far as the issues at this point went they disappeared. There was no dispute, no issue, other than might arise out of Zack's claim. He did come into court and claimed right to the possession of the stock and he needed to prove it. This under authority of Millus v. Lowrey Bros., 63 Okla. 261, 164 P. 663. While the case cited was an attachment action, it is stated in the opinion that the law of replevin is applicable. It is stated:

"* * * It appears that the interpleader, evidently relying upon section 3918, Stat. 1893 (section 4701, Rev. Laws 1910), without any direct attack upon the attachment proceedings, had, prior to the levy upon this personal property, merely a'leged title, and, liberally construing her interplea, claimed the right to the immediate possession of the property somewhat as if she were proceeding in replevin, * * * so that when the plaintiff filed his general denial thereto, an issue was made, to be tried as in rep'evin, as to the existence of her alleged right to the immediate possession of this property."

The issues in this case are, like in the case before the court then, made by the answer and interp'ea of Zack T. Miller on the one side and the pleadings of the plaintiff on the other. Before Zack appeared there were no issues, as the bank did not claim the property and the issues were made only by Zack's claims to the property and the denial thereof by the plaintiff. There is no need to make proof of admitted facts. If allegations in pleadings are admitted, or not denied in the adversary's pleadings, no proof need be made thereof. William C. Browning et al. v. S. A. Akins et al., Defendants, and Burnham et al., Interpleaders, 10 Okla. 536, 62 P. 281. Thus Zack was required to prove the statements and allegations of his answer and interplea that he was entitled to the possession of the stock as security for the payment of the Miller Bros. 101 Ranch Trust note which he bought from the bank.

Since the burden of proving the right to possession of the stock was upon the interpleader, Zack T. Miller, we will consider briefly the sufficiency of his evidence against which the plaintiff's demurrer was directed and which was sustained by the court. The only witnesses testifying were Zack himself and Mr. Meek, the president of the defendant bank, which had possession of the stock. Mr. Meek testifying for Zack testified in detail about the transaction when Zack bought the Miller Bros. 101 Ranch Trust note from the bank. His testimony is that Zack wanted the stock with the note, but that he, Meek, stated that J. C. Miller, Jr., did not want Zack to have the stock and that he promised such Mr. Miller that he would not deliver it to Zack until he got them together to adjust the matter. Meek testified that he said to Zack:

"I have told him (meaning J. C. Miller, Jr.,) I wouldn't deliver this to you if I did sell the note without you and he talking it over in my office and I will call Joe and have him come down and maybe we can do it now. I called Joe's office at the Ponca Industrial Finance Company, and they told me he had gone to Tonkawa; and we went ahead and made the deal anyway; and we continued to hold the note and the stock under those set-ups and conditions until it was replevined."

By Joe was meant J. C. Miller, Jr. Meek also testified that he told J. C. Miller, Jr.:

"I won't actually deliver the note and the stock to Zack without you and Zack talking it over and working it out among yourselves as to whether it is yours or his; but I am going to sell it to him just like it is if that is the way I have to. Is that the way you sold it to him? A. Yes, sir."

It does not appear that J. C. Jr., ever gave his consent and that Zack bought the

note without a definite understanding about who was to have the stock. Meek was the only witness other than the interpleader himself. Zack T. Miller testifying on behalf of himself stated when questioned as follows:

"Q. Did he show you the security? A. Showed me this letter. Q. Copy of the letter? A. Yes, sir. I read the part of it on the security of the Skelly and Continental, but I didn't know what the other $9,000 note proposition was in reference to. I took it from our conversation that the security listed in here went with it, because he told me he had ample security to guarantee the payment of it."

This is the strongest and practically all the evidence that Zack gave in reference to his having the stock with the note when he bought the latter from the bank. Zack at no time testified that there was a definite agreement that the stock went with the note. His witness, Meek, testified that the bank did not agree that the stock went to Zack with the note. The interpleader, Zack T. Miller, therefore, did not produce sufficient evidence at the trial to entitle him to a judgment for the corporation stock and the court rightfully sustained the plaintiff's demurrer to his evidence.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Frank Ertell, P. W. Holtzendorff, and J. Wood Glass in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Ertell and approved by Mr. Holtzendorff and Mr. Glass, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur.